IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

TRISTAN SCORPIO,

                    Plaintiff,

          vs.

SODEXO, INC. ETAT., KRISTELL "CHRIS"
REYNOLDS, and PAMELA REYNOLDS,

                    Defendants.

8:23CV282

MEMORANDUM AND ORDER

Plaintiff filed a Complaint on June 27, 2023.  Filing No. 1.  Plaintiff has been given leave to proceed in forma pauperis.  Filing No. 6.  The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I.  SUMMARY OF COMPLAINT

Plaintiff brings this action against his former employer, Sodexo, Inc. ("Sodexo"), where he was employed as a Catering Supervisor at Creighton University from approximately June 3, 2022, to November 2022.  Filing No. 1 at 3, 18, 22–23.  Plaintiff sues Sodexo; Kristell "Chris" Reynolds ("Reynolds"), the former General Manager for Sodexo; Pamela Reynolds ("Pamela"), Sodexo's Events Coordinator; and Shanice Smith ("Smith"), Senior Human Resources Specialist for Sodexo, (collectively "Defendants") alleging an employment discrimination claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), as codified, 42 U.S.C. §§ 2000e to 2000e-17.  Plaintiff alleges Defendants

discriminated against him based on his race (biracial), color ("caramel"), gender/sex ("male, sexual orientation"), religion, and national origin.  Filing No. 1 at 4, 18.[1]

Plaintiff's Complaint consists of the six-page Form Pro Se 7 Complaint for Employment Discrimination and forty-three pages of attachments, including his Charges of Discrimination filed with the Nebraska Equal Opportunity Commission ("NEOC") and the Equal Employment Opportunity Commission ("EEOC"), *Id.* at 17–18, 22–23, his EEOC Dismissal and Notice of Rights,[2] *Id.* at 10–12, and a "Witness Statement" Reynolds asked Plaintiff to write during his employment, *Id.* at 22, 24–40.[3]  In the section of the form Complaint asking for the facts of Plaintiff's case, Plaintiff alleges the following:

> Please See Attached Witness Statement.  The Company sold my personal information as a "life insurance policy."  To Terminate the policy is virtually impossible.  The company has effected [sic] Petitioner's Personal Credit.  The company has a $25,000 murder contract on Petitioner.  Evidence of this fact is in the attachment: Life Insurance Policy where the company is listed as the Beneficiary.

*Id.* at 5 (spelling and punctuation corrected).

Plaintiff's Witness Statement is dated September 11, 2022, and details Plaintiff's experiences of alleged discrimination and harassment with his immediate supervisor, Catering Manager Christopher "Bryce" Allen ("Allen"), a white male.  *Id.* at 24–40.  Generally, Plaintiff describes how Allen was unqualified for his job, would take credit for

---

[1] On the form Complaint, Plaintiff checked the boxes for race, color, gender/sex, religion, and national origin, but his explanations for each category appear to be incomplete and cut off.  Filing No. 1 at 4.

[2] Plaintiff's Complaint was filed within 90 days of the date he alleges he received his right-to-sue notice, *see* Filing No. 1 at 5, and, thus, appears timely.  *See* 42 U.S.C. § 2000e-5(f)(1) (the charging party has 90 days from the receipt of the right-to-sue notice to file a civil complaint based on his charge).

[3] Plaintiff also attached what appear to be documents regarding his proposals for future construction projects at Creighton University, Filing No. 1 at 44–45, and Plaintiff's conflicts with the City of Omaha regarding developing Plaintiff's real property, *Id.* at 19–21. It is unclear, though, how these documents relate to his employment discrimination claim.

others' hard work, would brag about the benefits he received in his position and imply that "gay minority employees" like Plaintiff would not receive such benefits, and would inappropriately discuss sexual topics with staff. *Id.* at 25. Plaintiff had to train Allen to do his job, and, "[o]nce trained . . . , Bryce Allen will hit you on the back (excessive daily pats on the employee's back), then the employee who has endured the physical and verbal passive aggressive comments or abuse receives word that Bryce Allen 'threw you under the bus in CEO Contract Meetings.'" *Id.* at 28. Plaintiff further states that Allen "tells catering staff and temps of all of [Plaintiff's] employment training, reprimands, and other professional growth mistakes during developments. . . [a]lways saying 'Tristan you're so Extra.'" *Id.*

There are two different Charges of Discrimination attached to Plaintiff's Complaint labeled as "Evidence #A3" and "Evidence #A5," respectively (hereinafter "Charge #A3" and "Charge #A5"). *See Id.* at 8, 17–18, 22–23. In Charge #A3, Plaintiff checks the boxes for discrimination based on race, color, sex, age, disability, retaliation, and "other" for "IRS Discrimination," and alleges violations of Title VII, as well as "IRS Civil Rights Laws," the "Civil Rights Act of 1991 [(Pub. L. 102-166) (CRA) and the Lily Ledbetter Fair Pay Act of 2009 (Pub. L. 111-2)]," and various Executive Orders. *Id.* at 17. Plaintiff alleges the following facts in Charge #A3:

> On or about June 3, 2022, I became a direct employee of Sodexo and was employed as a Catering Supervisor. During my employment with Sodexo, employees made disparaging comments about my, race, color, and sexual orientation. I was not allowed to attend meetings with other managers outside of my protected group. I was harassed and sexually harassed by a supervisor that kept hitting my back while at work. I was denied access to computers, phones and training to do my job. I was denied treatment for my disability after requesting it. After making a complaint to the General Manager about my supervisor I was fired around October 2022. I believe that I was harassed, sexually harassed, subjected to terms and conditions

of employment, and discharged because of my sex-male, sexual orientation, color-caramel, race-biracial, and in retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended and in violation of the Americans with Disabilities Act of 1990, as amended.

*Id*. at 18.

Like Charge #A3, Charge #A5 is also a form NEOC and EEOC Charge of Discrimination, but Plaintiff specifically alleges that Charge #A5 was "not created by Plaintiff," he "refuse[d] to sign" the Charge, and he includes Charge #A5 as an "[e]xample of the slander and untrue facts locally [sic] EEOC wanted Plaintiff to sign to justify Defendants['] unethical alleged behavior." *Id*. at 8, 22 (spelling and capitalization corrected). Specifically, Plaintiff appears to dispute the following statement in Charge #A5:

> I am a multiracial male, but I do not meet the sexual stereotype of a male in how men are expected to present themselves in my physical appearance, actions, and/or behaviors. I have been employed with Respondent since June 2022, most recently as a Catering Supervisor. Due to my race, sex and sexual orientation, I was harassed, sexually harassed, subjected to different terms and conditions of employment, denied training, denied promotions, and not paid proper wages. I complained about this treatment and due to my race, sex, sexual orientation, and in retaliation for my complaints, I was harassed, subjected to further different terms and conditions of employment, and I was terminated.

*Id*. at 22. Though it is unclear whether Charge #A5 was actually filed with the NEOC or EEOC, *see Id*. (space marked "Date Received by NEOC" crossed out), the Court will assume, for purposes of this initial review, that it was and will consider the allegations in Charge #A5 in assessing Plaintiff's claims.

The remainder of Charge #A5 alleges that Plaintiff was retaliated and discriminated against on the basis of sex and race in violation of Title VII and the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. §§ 48-1104 and 48-1114(1)(a),

based on Allen's physical and verbal harassment of Plaintiff and the unequal terms and conditions to which Plaintiff was subjected. Specifically, Plaintiff alleges Allen would have physical contact with Plaintiff daily, in which Allen would poke, rub, and even hit Plaintiff on the back. Plaintiff told Allen to stop, but Allen did not and "also subjected other female co-workers to sexual harassment." Filing No. 1 at 22. Allen called Plaintiff "that Extra Irrelevant Retarded Faggott" and "Extra." Id. Allen also "would tell catering staff and other employees about reprimands [Plaintiff] had received and other professional growth mistakes [Plaintiff] made during developments." Id. Plaintiff "complained to Supervisor Tiffany Marion (female, Black) and General Manger Krystell Reynolds (female, White) about Mr. Allen but nothing was done other than Reynolds shared my complaint with several other members of management." Id.

Plaintiff further alleges in Charge #A5 that he was subjected to different terms and conditions of employment when (1) Reynolds asked Plaintiff "to write a witness statement about Mr. Allen, but [Plaintiff] had to use [his] own computer and write it off of the clock"; (2) Plaintiff was not given a badge upon his hire and had to go on his own time to "ask about and obtain a badge to perform all his job functions," unlike "[a]ll white employees [who] get a badge on their first day"; (3) Plaintiff was denied corporate computer training by Sodexo; (4) Plaintiff "was not invited to attend Supervisor meetings, despite being a supervisor"; (5) Plaintiff "was not paid correctly in that [he] wasn't allowed to keep [his] tips" and Sodexo took money and overtime from Plaintiff's paychecks, "kept changing [Plaintiff's] IRS Tax exemptions," and "printed [Plaintiff's] overtime hours on different checks, despite not doing this for other employees"; and (6) Sodexo "refused to provide [Plaintiff] with free mental health therapy services over Zoom which was available to other

employees." *Id.* at 22–23.   Additionally, Sodexo failed to promote Plaintiff to either a Director position or a Catering Manager position, both for which Plaintiff applied and was qualified.   "However, despite allegedly not being qualified for these positions, [Plaintiff] was expected to train new employees including new upper management." *Id.* at 23.   After Plaintiff complained to Marion and Reynolds about these issues, Sodexo "harassed [Plaintiff] by sabotaging [his] catering contracts as [he] was missing food, venues wouldn't be decorated properly, and [his] contracts were changed." *Id.*

Plaintiff requested a leave of absence in September 2022, as he was experiencing mental anguish, which his supervisor approved. *Id.*   On November 2, 2022, Smith informed Plaintiff he was "terminated 'voluntarily' for not producing medical records for the leave of absence." *Id.*   Plaintiff admits "HR did send [him] several emails requesting this documentation, but [he] didn't know how to go about getting it." *Id.*   Plaintiff alleges his "performance was outstanding." *Id.*

As relief, Plaintiff seeks $250,000 in damages "[d]ue to the company creating a $25,000 Life Insurance Policy against Petitioner where the Sodexo, Inc. Etat. is listed as the: master policy holder and beneficiary" and "[d]ue to this Theft by Employment Deceit[,] [i]ncluding the 7 years of future . . . alleged extortion and credit tarnishing harassment from the company's '401 K & Life Insurance Policy' alleged Fraud[,] [c]ombined with the company's severe past EEOC Violations 10 Year Criminal History." *Id.* at 6 (spelling and punctuation corrected).

6

## II.  APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate.  *See* 28 U.S.C. § 1915(e).  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'"  *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).  Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties."  *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).   This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework."  *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004).  However,

even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

Liberally construed, Plaintiff here asserts claims for discrimination, harassment, and retaliation. A plaintiff need not plead facts sufficient to establish a prima facie case of employment discrimination in his or her complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002) (holding a complaint in employment discrimination lawsuit need not contain "facts establishing a prima facie case," but must contain sufficient facts to state a claim to relief that is plausible on its face), *abrogated in part on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570; *see also Cook v. George's, Inc.*, 952 F.3d 935, 939-40 (8th Cir. 2020). However, the elements of a prima facie case are relevant to a plausibility determination. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013) (stating elements of a prima facie case are "part of the background against which a plausibility determination should be made" and "may be used as a prism to shed light upon the plausibility of the claim"); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) ("While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.").

## III.  ANALYSIS

Plaintiff alleges discrimination, harassment, and retaliation claims on the basis of race, color, gender/sex, religion, and national origin under Title VII, 42 U.S.C. §§ 2000e-2000e-17, and the NFEPA, Neb. Rev. Stat. §§ 48-1101-1126.[4]   Filing No. 1 at 3–4, 22.

---

[4] Though Plaintiff asserted disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 to 12117, in Charge #A3, Filing No. 1 at 17–18, Plaintiff's Complaint does not assert a claim for disability discrimination, *Id.* at 4. In any case, Plaintiff alleges no facts to support a plausible claim for relief under the ADA.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The NFEPA is patterned after Title VII, and Nebraska courts have looked to federal decisions in analyzing claims brought under the Nebraska act.  *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1124 n.3 (8th Cir. 2017) ("We analyze discrimination claims under the NFEPA by applying the same analysis for discrimination claims under Title VII.").

Even liberally construed, Plaintiff's Complaint does not contain sufficient factual allegations to support a plausible claim for relief under Title VII.  Rather, Plaintiff makes only conclusory, unsupported allegations regarding Sodexo's creation of a life insurance policy against Plaintiff with Sodexo as the policy holder and beneficiary, which Plaintiff inexplicably characterizes as a "$25,000 murder contract" on Plaintiff.  Filing No. 1 at 5. While these allegations fail to support a Title VII claim, the Court will consider the allegations raised in Plaintiff's NEOC/EEOC Charges of Discrimination and Witness Statement, as well as those raised in the Complaint, in assessing Plaintiff's claims. *See Coleman v. Correct Care Solutions*, 559 Fed. App'x. 601, 602 (8th Cir. 2014).  For the reasons discussed below, Plaintiff's Complaint fails to state a plausible claim for discrimination, harassment, or retaliation under Title VII and the NFEPA upon which relief may be granted, but Plaintiff will be given leave to amend his Complaint to allege sufficient facts in support of his claims.

**A.  Claims Against Reynolds, Pamela, and Smith**

Because "Title VII addresses the conduct of employers only and does not impose liability on co-workers," *Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074, 1079 (8th Cir. 2006), and because Title VII "does not provide for an action against an individual supervisor," *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1147 (8th Cir. 2008), Plaintiff's claims against individual Defendants Reynolds, Pamela, and Smith will be dismissed.

**B.  Claims Not Presented to EEOC and/or NEOC**

While Plaintiff checked the boxes on his form Complaint corresponding to discrimination based on religion and national origin, Filing No. 1 at 4, the Charges of Discrimination Plaintiff filed with the EEOC and NEOC did not include such claims, *see Id.* at 17–18, 22–23.  Prior to filing a suit in federal court under Title VII, a plaintiff is required to exhaust his administrative remedies by first seeking relief through the EEOC. 42 U.S.C. § 2000e-5(f)(1); *Malone v. Ameren UE*, 646 F.3d 512, 516 (8th Cir. 2011).  "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice that must be individually addressed before the EEOC." *Voss v. Hous. Auth. of the City of Magnolia*, 917 F.3d 618, 623 (8th Cir. 2019) (internal quotation marks and emphasis omitted).  "While a charge of discrimination 'need not specifically articulate the precise claim, it must nevertheless be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim.'" *Malone*, 646 F.3d at 516 (quoting *Humphries v. Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 697 (8th Cir. 2009)).  Here, Plaintiff's failure to exhaust his administrative remedies precludes him from now claiming that Defendant

10

discriminated, harassed, or retaliated against him because of his religion or national origin, and such claims will be dismissed. *See id.* (affirming dismissal of failure-to-promote claim that was not alleged in the charge of discrimination filed with the EEOC).

## C. Discrimination

To state a prima facie claim of race or sex discrimination, Plaintiff must allege facts showing that (1) he is a member of a protected class; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011) (race); *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir. 2014) (sex discrimination). "The required prima facie showing is a flexible evidentiary standard, and a plaintiff can satisfy the fourth part of the prima facie case in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, or biased comments by a decisionmaker." *Pye*, 641 F.3d at 1019 (internal quotations and citations omitted).

Here, Plaintiff alleges he is biracial, a protected class for purposes of Title VII. *See Perry v. AutoZoners, LLC*, 948 F. Supp. 2d 778, 786–87 (W.D. Ky.), *on reconsideration in part*, 954 F. Supp. 2d 599 (W.D. Ky. 2013) ("[U]nder Title VII, mixed-race individuals are protected.") (citing cases). Plaintiff also alleges Sodexo discriminated against him because of his sexual orientation, which is unlawful under Title VII. *Bostock v. Clayton Cty.*, 590 U.S. ---, 140 S. Ct. 1731 (2020) (holding discrimination on the basis of an employee's homosexuality or transgender status is discrimination on the basis of sex and violates Title VII). Plaintiff also alleges facts to show he met his employer's legitimate expectations and that his job performance was satisfactory.

Regarding the third element, "[a]n adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804–05 (8th Cir. 2013) (citing *Wilkie v. Dep't of Health and Human Servs.*, 638 F.3d 944, 955 (8th Cir.2011)).  Plaintiff sufficiently alleges in Charge #A3 and Charge #A5 that he suffered an adverse employment action in that he was terminated, was not paid correctly, was denied promotions, and was subjected to unequal terms and conditions of employment, such as being denied training and other resources, attendance at supervisor meetings, an employer-provided badge on his first day, and mental health therapy services over Zoom.

However, the Court cannot reasonably infer that circumstances exist that give rise to an inference of discrimination based on Plaintiff's race and/or sex.  First, Plaintiff alleges no facts linking his termination to his race or sexual orientation.  Rather, Plaintiff alleges he was fired by Smith after he failed to provide requested paperwork regarding the reasons for his continued absence from work. Filing No. 1 at 23. Regarding Plaintiff's failure-to-promote and unequal terms and conditions of employment claims, Plaintiff alleges no facts suggesting someone outside of his protected class was treated more favorably *and was similarly situated*.  Plaintiff's allegations about Allen receiving certain perks or differential treatment from Plaintiff, while unfortunate given the facts alleged about Allen's inappropriate behavior, fail to suggest racial or sexual discrimination against Plaintiff since Allen was a manager and in a position different and above Plaintiff's

12

position.  Nor does Plaintiff allege that Allen was a decisionmaker with respect to any of the promotions or the unequal terms and conditions of Plaintiff's employment.  Moreover, it is difficult to draw an inference of discrimination based on Plaintiff's race or sex when Plaintiff appears to disclaim the accuracy of Charge #A5 in which the majority of facts regarding Sodexo's alleged discriminatory acts are alleged.  *See Id.* at 8, 22–23.  Indeed, it is unclear from Plaintiff's allegations whether Charge #A5 was actually filed with the NEOC or EEOC at all.  Accordingly, the Court concludes Plaintiff has failed to state a discrimination claim upon which relief may be granted.

**D.  Harassment or Hostile Work Environment**

Liberally construed, Plaintiff sues Sodexo alleging a hostile work environment claim based on Plaintiff's race and sex under Title VII.  "Hostile work environment harassment occurs when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 805 (8th Cir. 2013) (internal quotation marks and citation omitted).  To succeed on such a claim under Title VII, Plaintiff must establish that "(1) [he] is a member of a protected class; (2) unwelcome harassment occurred; (3) there is a causal nexus between the harassment and [his] protected-group status; (4) the harassment affected a term, condition, or privilege of [his] employment; and (5) [the employer] knew or should have known of the harassment and failed to take prompt and effective remedial action."  *Id.* at 805-06 (internal quotation marks and citation omitted).  *See also Linville v. Sears, Roebuck & Co.*, 335 F.3d 822, 823–24 (8th Cir. 2003) (elements of hostile work environment harassment claim based on sex).  "To determine whether the

13

harassment affected a term, condition, or privilege of [Plaintiff's] employment, we must consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with [Plaintiff's] job performance." *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 922 (8th Cir. 2018) (quoting *Sellers v. Deere & Co.*, 791 F.3d 938, 945 (8th Cir. 2015)) (internal quotation marks and alterations omitted).

Here, Plaintiff alleges Allen used "racially motivated words toward minority employees," bragged about the benefits he received in his position and implied that "gay minority employees" like Plaintiff would not receive such benefits, inappropriately discussed sexual topics with staff, excessively patted Plaintiff on the back, sexually harassed female employees, disparaged Plaintiff's performance in front of others, and insulted Plaintiff, calling him "that Extra Irrelevant Retarded Faggott" and "Extra." Filing No. 1 at 22, 25, 27. Plaintiff's allegations are sufficient at this stage to suggest harassment based on race and sex.

Even though Plaintiff has alleged a link between the harassment he experienced and his race and sex, the Complaint's allegations fail to suggest conduct that is severe enough to support a hostile work environment claim. Conduct affecting a term, condition, or privilege of employment "requires that '[t]he harassment . . . be severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must subjectively believe [his] working conditions have been altered.'" *Moses*, 894 F.3d at 922 (quoting *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 801 (8th Cir. 2009)) (internal quotation marks omitted). "The standard for demonstrating a hostile work environment under Title VII is demanding, and does not prohibit all verbal or physical

14

harassment and it is not a general civility code for the American workplace." *Jackman*, 728 F.3d at 806 (internal quotation marks and citation omitted). "[M]erely rude or unpleasant conduct are insufficient to affect the terms and conditions of employment." *Moses*, 894 F.3d at 922–23 (quoting *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 420 (8th Cir. 2010)) (internal quotation marks omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* at 923 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)) (internal quotation marks omitted).

Allen's conduct as alleged was certainly unprofessional, inappropriate, immature, and distasteful, but the facts alleged fail to suggest the kind of severe and pervasive conduct required to support a hostile environment claim under Eighth Circuit precedent. *See Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004) (finding racial remarks made directly to plaintiff once a month for two years by owner and operators was insufficient to render workplace objectively hostile); *Ottman v. City of Independence*, 341 F.3d 751, 760 (8th Cir. 2003) (reversing denial of summary judgment and "conclud[ing] the district court erred in finding a triable issue for the jury" where a coworker made sexist and belittling comments to, about, and around plaintiff "on a weekly, if not daily, basis"); *Scusa v. Nestle USA Co.,* 181 F.3d 958, 967 (8th Cir. 1999) (nine incidents of unpleasant conduct and offensive comments, considered "either individually or collectively," were not "severe or pervasive enough so as to alter a term, condition, or privilege of [ ] employment."); *Ways v. City of Lincoln*, 871 F.2d 750, 754–55 (8th Cir. 1989) (upholding

finding of hostile work environment where plaintiff identified approximately 50 examples of racial harassment).

### E.  Retaliation

Title VII also prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation under Title VII, a plaintiff must show "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events."  *Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 436 (8th Cir. 2016).

Here, Plaintiff alleges he complained to Reynolds and another supervisor, Marion, about Allen and was subjected to different terms and conditions of employment when Reynolds asked Plaintiff to write his Witness Statement about Allen using his "own computer and write it off the clock" and Sodexo "harassed [Plaintiff] by sabotaging [his] catering contracts as [he] was missing food, venues wouldn't be decorated properly, and [his] contracts were changed."  Filing No. 1 at 22–23.  Plaintiff also alleges he was terminated after he complained.  *Id*. at 18.  Plaintiff's complaint about Allen could constitute "protected activity" for purposes of Title VII.  However, Plaintiff's allegations that he was subjected to different terms and conditions as a result of his complaint are insufficient to establish an adverse employment action.  To constitute an adverse employment action, the "action must be material, not trivial."  *AuBuchon v. Geithner*, 743 F.3d 638, 644 (8th Cir. 2014) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S.

53, 68 (2006)).  The retaliation must produce some "injury or harm."  *Lopez v. Whirlpool Corp.*, 989 F.3d 656, 665 (8th Cir. 2021) (internal quotation marks and quotation omitted). The fact that Plaintiff was asked to provide a Witness Statement about Allen on his own time does not rise to the level of an adverse employment action, nor does Plaintiff allege sufficient facts to show that the vague issues with his catering contracts produced some injury or harm to his employment.

Plaintiff's termination is, of course, an adverse employment action, but there are no facts from which the Court can reasonably infer a causal connection between Plaintiff's complaint about Allen on or about September 11, 2022, and his termination approximately two months later on November 2, 2022.  "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation."  *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc); *see Kipp v. Missouri Highway & Transp. Comm'n.*, 280 F.3d 893, 897 (8th Cir. 2002) ("[T]he interval of two months between the complaint and Ms. Kipp's termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in Ms. Kipp's favor on the matter of causal link."); *Cheshewalla v. Rand & Son Const. Co.*, 415 F.3d 847, 852 (8th Cir. 2005) (4-week interval between plaintiff's complaint of harassment and her layoff was insufficient to establish showing of causal connection, given that she missed many days of work in the interval and the company was undergoing a period of layoffs).  Moreover, Plaintiff specifically alleged in Charge #A5 that he was terminated after he failed to provide requested medical records for his leave of absence.  Filing No.

1 at 23.  On the allegations presented, Plaintiff has failed to allege a plausible claim of retaliation under Title VII.

## IV.  OTHER PENDING MOTIONS

### A.  Motion for Appointment of Counsel

On August 8, 2023, Plaintiff filed a motion requesting "court appointed legal counsel representation."  Filing No. 7.  Plaintiff also included a request for appointed counsel in his Complaint.  Filing No. 1 at 7.  "There is no constitutional or statutory right to appointed counsel in civil cases." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).  A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011).  "Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the presence or absence of conflicting testimony."  *Recca v. Omaha Police Dep't*, 859 F. App'x 3, 4 (8th Cir. 2021) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)).

The Court has carefully reviewed the record and finds there is no need for the appointment of counsel at this time as, at this early stage of litigation, Plaintiff appears able to adequately present his claims.  The Court is, however, aware that this situation may change as litigation progresses.  As the Eighth Circuit Court of Appeals instructs, the Court will "continue to be alert to the possibility that, because of procedural complexities or other reasons, later developments in the case may show either that counsel should be appointed, or that strict procedural requirements should, in fairness, be relaxed to some

degree." *Williams v. Carter*, 10 F.3d 563, 567 (8th Cir. 1993). Accordingly, Plaintiff's request for appointment of counsel is denied without prejudice to reassertion.

**B. Motion for Investigation**

On September 13, 2023, Plaintiff filed a "[r]equest for FBI, court appointed investigation" alleging Sodexo "has paid people off to execute [Plaintiff]" and has "created an action in DC Courts against [Plaintiff] to continue w[ith] the execution lynching of [Plaintiff] as a result of making the EEOC action," and Plaintiff is "being killed/murdered by Douglas County Courts who are working [for] Creighton." Filing No. 12 at 1, 4 (spelling and capitalization corrected). Attached to Plaintiff's motion are documents that appear to relate to certain property disputes between Plaintiff and the City of Omaha and NP Dodge Management Company. *Id.* at 2–3, 5–8.

Plaintiff's conclusory allegations that Sodexo is attempting to execute Plaintiff based on unrelated Douglas County court cases are unsupported by facts and do not appear based in reality. Regardless, "Plaintiff has no constitutional right or any other basis to compel an investigation." *Thomas v. Mattingly*, No. 8:21CV272, 2021 WL 4504698, at *2 (D. Neb. Oct. 1, 2021) (citing cases); *see also Richter v. Sprint/VMUSA*, No. 8:19CV223, 2019 WL 3859796, at *3 (D. Neb. Aug. 16, 2019) ("Plaintiff does not have a right to compel a criminal investigation or prosecution." (citing *Parkhurst v. Tabor*, 569 F.3d 861, 866 (8th Cir. 2009)). Plaintiff's motion for an investigation is, therefore, denied.

**C. Motion to Suppress Evidence and to Compel Courts**

Finally, on January 24, 2024, Plaintiff filed what he titled a "Motion to Suppress Evidence, Motion for Ex Parte, and Motion to Compel Courts." Filing No. 13 (spelling corrected). Plaintiff's motion consists of a summary list of exhibits and evidence and

attaches documents related to Plaintiff's pending criminal case in the County Court of Douglas County, Nebraska, in which he was found guilty of misdemeanor offenses related to the condition of certain real property Plaintiff owns.  *See, e.g.*, *Id.* at 5.  Documents Plaintiff attached to his motion indicate he is scheduled for sentencing on February 8, 2024.  *Id.* at 4.

It is unclear what relief, if any, Plaintiff is asking from the Court.  Plaintiff's pending criminal case has no relation to or bearing on his complaints of employment discrimination by Sodexo.  Moreover, the Court cannot and will not interfere with Plaintiff's pending state court criminal proceedings.  *See Younger v. Harris*, 401 U.S. 37 (1971) (federal courts must not interfere with, or intervene in, ongoing criminal proceedings in state court).  To the extent Plaintiff's motion seeks any relief in this Court, his motion is denied.

## V.  CONCLUSION

Plaintiff's Complaint fails to state a claim under Title VII and NFEPA upon which relief may be granted and is subject to dismissal under 28 U.S.C. § 1915(e)(2).  However, on the Court's own motion, Plaintiff will be given 30 days in which to file an amended complaint alleging sufficient facts to state a plausible claim for relief against Sodexo under Title VII if such allegations can be truthfully and plausibly alleged.  Plaintiff is advised that any amended complaint he files will supersede his original Complaint.  In amending his Complaint, Plaintiff should restate any relevant allegations from his original Complaint, including those alleged in his Charges of Discrimination, and should clearly specify whether both Charge #A3 and Charge #A5 were presented to the NEOC and/or EEOC. If an amended complaint is not filed within 30 days, this action will be dismissed without further notice.

IT IS THEREFORE ORDERED that:

1.     Plaintiff shall have until **March 11, 2024**, to file an amended complaint in accordance with this Memorandum and Order.  Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff.

2.     In the event that Plaintiff files an amended complaint, Plaintiff shall restate the relevant allegations of the Complaint, Filing No. 1, and any new allegations.  Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

3.     The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) in the event he files an amended complaint.

4.     The Clerk of Court is directed to set a pro se case management deadline using the following text: **March 11, 2024**: amended complaint due.

5.     Plaintiff's Motion for Appointment of Counsel, Filing No. 7, is denied without prejudice to reassertion.

6.     Plaintiff's Motion for Investigation, Filing No. 12, and Motion to Suppress Evidence, Motion for Ex Parte, and Motion to Compel Courts, Filing No. 13, are denied.

7.     Plaintiff shall keep the court informed of his current address at all times while this case is pending.  Failure to do so may result in dismissal without further notice.

Dated this 8th day of February, 2024.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge